338

Joe O'BRIEN, Plaintiff–Appellant,

v.

**MICHIGAN DEPARTMENT OF CORRECTIONS, et al.,**
Defendants–Appellees.

No. 14–1132.

United States Court of Appeals,
Sixth Circuit.

Oct. 17, 2014.

Before: COLE, Chief Judge; BATCHELDER and CLAY, Circuit Judges.

### ORDER

Joe O'Brien, a Michigan prisoner proceeding pro se, appeals the district court's sua sponte dismissal of his 42 U.S.C. § 1983 action under the screening provisions of the Prison Litigation Reform Act ("PLRA"). This case has been referred to a panel of the court pursuant to Federal Rule of Appellate Procedure 34(a)(2)(C). Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

O'Brien commenced this action against defendants Michigan Department of Corrections ("MDOC"); Corizon Health, Inc. ("Corizon"); Garcia Clinical Laboratory, Inc. ("Garcia"); Regional Medical Officer William Borgerding; Dale E. Asche, M.D., an on-site doctor at Ojibway Correctional Facility ("OCF"); Lizabeth Ralles, M.D., an on-site doctor at OCF; Jeffrey W. Bomber, M.D., an on-site doctor at Newberry Correctional Facility ("NCF"); Richard D. Russell, manager of the grievance section of MDOC's Legal Affairs Department; Lorenz P. Kiehorn, M.D., an employee of Garcia; Joshua Schad, R.N., an employee of the MDOC Director's Office; (unknown) Shullick, M.D., a Medical Practitioner at NCF; and Aster Berhane, M.D., an on-site doctor at NCF. O'Brien alleged that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment by denying him treatment for hypogonadotropic hypogonadism and retaliated against him in violation of his First Amendment rights. He also asserted a claim under the Americans with Disabilities Act ("ADA") and state law tort claims. O'Brien sought monetary, declaratory, and injunctive relief.

In his complaint, O'Brien alleged that, in 1997–1998, while serving in the United States Marine Corps, he was diagnosed with hypogonadotropic hypogonadism. "Hypogonadism is a condition in which the male testes or the female ovaries produce little or no sex hormones." *Hypogonadotropic Hypogonadism*, MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/ency/article/000390.htm (last updated Aug. 1, 2013). O'Brien stated that he was initially treated by the Department of Veterans Affairs ("VA") with thrice-weekly injections of testosterone along with human chorionic gonadotropin and that "[t]his therapy successfully developed the testis to a 'functional' size." He was then given weekly testosterone injections as "a maintenance program."

Upon his entry into the MDOC system in 2010, O'Brien informed the medical staff of his condition and was told that his hormone therapy would be maintained. O'Brien's complaint primarily alleges that the defendants failed to maintain the treatment recommended by the VA by ordering bi-weekly injections rather than weekly injections, decreased the dosage and frequency of injections, and eventually discontinued all treatment despite his requests for weekly injections and repeated complaints of pain and other symptoms. He also asserted that the defendants denied him treatment in retaliation for filing grievances complaining about his medical care. O'Brien alleged that the defendants' refusal to provide treatment has caused him to suffer symptoms of hypogonadism. He asserted that his genitals are atrophied and that he has developed breasts, which has caused sexual predators to make advances towards him. O'Brien alleged that he fears for his safety.

The district court screened O'Brien's complaint and dismissed it for failure to state a claim, pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c). O'Brien timely filed a motion for reconsideration, which the district court denied. On appeal, O'Brien reasserts the claims he raised below and also asserts for the first time that the defendants' conduct violated Section 504 of the Rehabilitation Act of 1973.

We review de novo a district court's dismissal of a suit under §§ 1915(e)(2) and 1915A. *Hill v. Lappin,* 630 F.3d 468, 470–71 (6th Cir.2010). Under the PLRA, district courts must screen and dismiss any complaint filed by a prisoner against a governmental entity or an officer or employee of a governmental entity that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a) and (b); *Grinter v. Knight,* 532 F.3d 567, 572 (6th Cir.2008). "[T]o survive scrutiny under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill,* 630 F.3d at 471 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A pro se complaint alleging that prison officials were deliberately indifferent to a prisoner's medical needs must be liberally construed and "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff could prove *no set of facts* in support of his claim which would entitle him to relief." *Byrd v. Wilson,* 701 F.2d 592, 594 (6th Cir.1983).

■ First, the district court properly concluded that O'Brien could not maintain a § 1983 action against MDOC because it was immune from suit under the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Harrison v. Michigan,* 722 F.3d 768, 771 (6th Cir. 2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 1023, 188 L.Ed.2d 119 (2014).

■ The district court also properly dismissed O'Brien's claims against Corizon. While "a private entity that contracts to perform traditional state functions may ... be sued pursuant to § 1983," a § 1983 claim cannot be based solely on a theory of respondeat superior. *Johnson v. Karnes,* 398 F.3d 868, 877 (6th Cir.2005) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Rather, an entity may be liable under § 1983 only if its official policies or customs resulted in injury to the plaintiff. *Id.* O'Brien made no such allegations in his complaint, and, therefore, failed to state a claim against Corizon. Although the district court did not consider whether Garcia, a private entity, could be held liable under § 1983, O'Brien's claims against Garcia can be dismissed on the same basis.

■ O'Brien also failed to state a claim under § 1983 against defendants Schad, Russell, and Kiehorn. O'Brien's only allegations against Schad and Russell concerned the denial of one of his administrative grievances. He claimed that, in denying his grievance, they "ignor[ed] all of the other missed injections." A defendant's involvement in the denial of an administrative grievance is insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983. *See Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999). As for defendant Kiehorn, the only mention of him in the complaint states that he was the contact person at Garcia. While O'Brien made vague allegations in his complaint about his laboratory results being altered and "reference ranges" being changed, he made no specific allegations that Kiehorn was involved in such conduct. In the absence of any allegations as to how he was personally

involved in the violation of O'Brien's constitutional rights, the complaint failed to state a claim against Kiehorn. *See Heyerman v. Cnty. of Calhoun,* 680 F.3d 642, 647 (6th Cir.2012).

The majority of O'Brien's claims against the remaining defendants—Borgerding, Berhane, Shullick, Ralles, Asche, and Bomber—concerned their personal involvement in the denial of adequate medical care. "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on a prisoner by acting with 'deliberate indifference' to the prisoner's serious medical needs." *Talal v. White,* 403 F.3d 423, 426 (6th Cir.2005) (quoting *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir.2004)). A claim for denial of adequate medical care has an objective and a subjective component. *See Johnson,* 398 F.3d at 874. To satisfy the objective component, the plaintiff must allege that he suffers from a sufficiently serious medical need. *Id.; see Amick v. Ohio Dep't of Rehab. & Corr.,* 521 Fed. Appx. 354, 358 (6th Cir.2013) ("The objective component is satisfied by showing a sufficiently serious condition that denial of needed medical care would result in the unnecessary and wanton infliction of pain or pose a substantial risk of serious harm."). The subjective component is satisfied if the plaintiff alleges facts which "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Johnson,* 398 F.3d at 874. (internal quotation marks omitted). "[A] prisoner states a proper cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir.1976).

■ The district court erred in holding that the complaint failed to state a claim under the Eighth Amendment. O'Brien's complaint satisfies the objective component. The complaint alleged that O'Brien had been diagnosed with hypogonadotropic hypogonadism prior to his incarceration and was receiving treatment for his condition. *See Blackmore,* 390 F.3d at 897 (explaining that a serious medical need may be either "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (internal quotation marks omitted)).

■ O'Brien's allegations also satisfy the subjective component of an Eighth Amendment claim. The complaint and the attached exhibits show that the defendants were aware that O'Brien had previously received weekly testosterone injections and that O'Brien repeatedly complained to medical staff that the bi-weekly injections of testosterone were inadequate and that he was experiencing symptoms between injections, including pain in his chest and genitals, migraines, mood swings, lack of energy, loss of drive, and irregular sleep. Despite his complaints, the dosages and frequency of injections were decreased until the medication was eventually discontinued. In addition, O'Brien alleged that, on more than one occasion, his injections were delayed beyond the scheduled time for injection due to the defendants' failure to order his medication or to timely send out his blood for laboratory analysis. The complaint further alleged that, when the medication was discontinued, the therapeutic effects of years of treatment were reversed, and he suffered atrophy of his genitalia, developed breast tissue, and became depressed. Notably, the complaint

alleged that, in April 2012, after the testosterone injections were discontinued, he was diagnosed by Dr. Ralles with gynecomastia, which is the excess growth of breast tissue in males. *See Gynecomastia,* MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/ency/article/003165.htm (last updated July 26, 2011). O'Brien's detailed and specific allegations sufficiently stated that his need for treatment was obvious, he made reasonable requests for treatment, and the defendants' denial of his requests exposed him to undue suffering. *See Westlake,* 537 F.2d at 860.

The district court next concluded that O'Brien failed to state a First Amendment claim of retaliation against any defendant because he could not show that his medical treatment constituted an adverse action or that the defendants were motivated by his filing of grievances concerning his medical care. In order to succeed on a claim of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) the adverse action was motivated by the protected conduct. *See Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc).

■ The district court erred in holding that O'Brien's complaint failed to state a claim of retaliation. First, as the district court acknowledged, O'Brien's grievances constituted constitutionally protected conduct under the First Amendment. *See Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir.2001). Second, O'Brien alleged that the defendants delayed his testosterone injections and eventually discontinued the medication entirely because he had filed grievances concerning his medical care. O'Brien has alleged an adverse action because a delay in treatment and discontinuance of medication would likely deter a prisoner like O'Brien, who believed he needed the medication to avoid the symptoms from which he allegedly suffered. *See Wash v. Gilless,* No. 99–5036, 2000 WL 659225, at *4 (6th Cir. May 11, 2000) ("[T]he denial of requested medical examinations constitutes an adverse action because it would likely have a strong deterrent effect on an inmate who believed that the tests were necessary to detect a serious medical condition.").

■ Third, O'Brien's complaint alleged facts sufficient to show that the defendants were motivated by O'Brien's filing of grievances when they denied his requests for more frequent testosterone injections and eventually discontinued the treatment. Although "conclusory allegations of [a] retaliatory motive unsupported by material facts will not be sufficient to state a ... claim," circumstantial evidence may suffice "because of the difficulty in producing direct evidence of an official's retaliatory motive." *Hill,* 630 F.3d at 475 (citations and internal quotation marks omitted). A retaliatory motive may be shown by temporal proximity between the protected conduct and the adverse action. *See Muhammad v. Close,* 379 F.3d 413, 417–18 (6th Cir.2004) (citing *DiCarlo v. Potter,* 358 F.3d 408, 422 (6th Cir.2004)).

The district court found that O'Brien made only a conclusory allegation of temporal proximity to show retaliatory motive, which was insufficient to create an inference of retaliation; however, the court appears to have ignored O'Brien's allegation that at least one defendant, Dr. Berhane, explicitly told him that if he did not stop complaining, she would see to it that he did not receive any treatment. O'Brien alleged that Dr. Berhane stated this to him at an appointment with her that took place only ten days after he filed his October 14, 2011 grievance, in which he complained that medical staff was not following the

prescribed orders concerning the timing of his injections. He also alleged that Dr. Borgerding's March 16, 2012 order discontinuing all treatment came just after he filed a grievance on March 9, 2012, concerning his request for daily treatment. His allegations of temporal proximity coupled with facts alleging direct evidence of a retaliatory motive were sufficient to allow his retaliation claim to proceed beyond the pleading stage. Accordingly, O'Brien stated a plausible claim of First Amendment retaliation with respect to defendants Berhane and Borgerding. Because he made no allegations of retaliation against any of the other defendants, his retaliation claim against those defendants was properly dismissed.

To the extent O'Brien asserted that the defendants' conduct violated his substantive due process rights, the district court properly dismissed such claim. O'Brien's allegations concerned the denial of medical care, thus, "[t]he Eighth Amendment is the primary source of substantive protection" available to him. *Dodson v. Wilkinson*, 304 Fed.Appx. 434, 438 (6th Cir.2008); *see Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing'" such a claim. (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))).

■ The district court also properly dismissed O'Brien's claims under the ADA. "Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir.2010) (quoting 42 U.S.C. § 12132). To make out a prima facie case under the ADA, O'Brien must establish that he has a disability; that he is otherwise qualified; and that he "is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of [his] disability." *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citation and internal quotation marks omitted). O'Brien alleged that he was being denied medical treatment in violation of the ADA, but did not allege that he was denied treatment because of his disability. Rather, he alleged that the defendants denied him treatment in retaliation for filing grievances and in an effort to cut costs. He, therefore, failed to state a prima facie case under the ADA.

In his appellate brief, O'Brien argues that the defendants' conduct violated not only the ADA, but also Section 504 of the Rehabilitation Act. We, however, will not consider this argument because he did not assert it in the district court. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir.2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.").

In conclusion, the district court's judgment is vacated as to O'Brien's Eighth Amendment claim against defendants Borgerding, Bomber, Berhane, Ralles, Asche, and Shullick and his First Amendment retaliation claim against defendants Borgerding and Berhane. To the extent O'Brien asserted state law claims of negligence and medical malpractice against Borgerding, Bomber, Berhane, Ralles, Asche, and Shullick, the district court's dismissal of those claims is also vacated. We affirm the judgment in all other respects. The case is remanded to the dis-

trict court for further proceedings consistent with this order. Fed. R.App. P. 34(a)(2)(C).